## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

LARRY GUERRERO,

      Plaintiff,

      v.

ARRAY BIOPHARMA INC., CARRIE S.
COX, CHARLES M. BAUM, GWEN A.
FYFE, KYLE A. LEFKOFF, JOHN A.
ORWIN, SHALINI SHARP, RON
SQUARER, and GIL J. VAN LUNSEN,

      Defendants.

---

### COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND JURY DEMAND

---

Plaintiff Larry Guerrero ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### NATURE OF THE ACTION

1.    This is an action against Array BioPharma Inc. ("Array" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a), and Rule 14d-9 promulgated thereunder by SEC, 17 C.F.R. § 240.14d-9, in connection with Pfizer Inc.'s ("Pfizer") proposed acquisition of Array (the "Proposed Transaction").

1

**JURISDICTION AND VENUE**

2.      The claims asserted herein arise under and pursuant to Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a)) and Rule 14d-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14d-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company is headquartered in this District and/or Defendants conduct business in this District.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Array common stock.

7.      Defendant Array is a biopharmaceutical company that focuses on the discovery, development, and commercialization of small molecule drugs to treat patients with cancer and other diseases in North America, Europe, and the Asia Pacific. Array is incorporated in Delaware with principal executive offices located in Boulder, Colorado. Array's common stock trades on the Nasdaq Global Market under the ticker symbol, "ARRY."

8.      Defendant Carrie S. Cox ("Cox") is the Chairman of the Board of Array.

9.      Defendant Charles M. Baum ("Baum") is a director of Array.

10.     Defendant Gwen A. Fyfe ("Fyfe") is a director of Array.

11.     Defendant Kyle A. Lefkoff ("Lefkoff") is a director of Array.

12.     Defendant John A. Orwin ("Orwin") is a director of Array.

13.     Defendant Shalini Sharp ("Sharp") is a director of Array.

14.     Defendant Ron Squarer ("Squarer") is the Chief Executive Officer and a director of Array.

15.     Defendant Gil J. Van Lunsen ("Lunsen") is a director of Array.

16.     Defendants Cox, Baum, Fyfe, Lefkoff, Orwin, Sharp, Squarer, and Lunsen are collectively referred to herein as the "Individual Defendants."

17.     Defendants Array and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. Company Background

18.     Array is a fully integrated biopharmaceutical company focused on the discovery, development and commercialization of transformative and well-tolerated targeted small molecule drugs to treat patients afflicted with cancer and other high-burden diseases.

19.     According to Array, its lead clinical programs, encorafenib and binimetinib, are being investigated in over 30 clinical trials across a number of solid tumor indications, including a Phase 3 trial in BRAF-mutant metastatic colorectal cancer.

20.     Array's pipeline includes several additional programs being advanced by Array or current license-holders, including AstraZeneca, Eli Lilly, Genentech, and others.

### B. The Proposed Transaction

21.     On June 17, 2019, Array and Pfizer issued a press release announcing that they had

3

entered into a definitive merger agreement whereby Pfizer would commence a cash tender offer to purchase all outstanding shares of Array common stock for $48.00 per share in cash. The press release states, in pertinent part:

### PFIZER TO ACQUIRE ARRAY BIOPHARMA

*—Proposed acquisition strengthens Pfizer's innovative biopharmaceutical business and is expected to accelerate its growth trajectory particularly in the long term*

*—Opportunity to strengthen category leadership in Oncology with the addition of a breakthrough combination of BRAF/MEK inhibitors under investigation for a potential first-in-class therapy for patients with BRAF-mutant metastatic colorectal cancer*

*—Expands Pfizer's pipeline with multiple high-potential targeted investigational cancer therapies and adds a large portfolio of royalty-generating out-licensed medicines*

*—Plans to maintain highly productive research unit in Boulder to complement Pfizer's research hubs*

*—Transaction valued at $48 per Array share in cash, for a total enterprise value of approximately $11.4 billion*

Monday, June 17, 2019 - 6:45am EDT

NEW YORK & BOULDER, Colo.--(BUSINESS WIRE)-- Pfizer Inc. (NYSE: PFE) and Array BioPharma Inc. (NASDAQ: ARRY) today announced that they have entered into a definitive merger agreement under which Pfizer will acquire Array, a commercial stage biopharmaceutical company focused on the discovery, development and commercialization of targeted small molecule medicines to treat cancer and other diseases of high unmet need. Pfizer has agreed to acquire Array for $48 per share in cash, for a total enterprise value of approximately $11.4 billion. The Boards of Directors of both companies have approved the merger.

Array's portfolio includes the approved combined use of BRAFTOVI® (encorafenib) and MEKTOVI® (binimetinib) for the treatment of BRAFV600E or BRAFV600K mutant unresectable or metastatic melanoma. The combination therapy has significant potential for long-term growth via expansion into additional areas of unmet need and is currently being investigated in over 30 clinical trials across several solid tumor indications, including the Phase 3 BEACON trial in BRAF-mutant metastatic colorectal cancer (mCRC).

In the U.S., colorectal cancer is the third most common type of cancer in men and women. An estimated 140,250 patients were diagnosed with cancer of the colon or rectum in 2018, and approximately 50,000 are estimated to die of their disease each year.1 BRAF mutations are estimated to occur in up to 15% of colorectal cancer cases and represent a poor prognosis for these patients.

\* \* \*

In addition to the combination therapy for BRAF-mutant metastatic melanoma, Array brings a broad pipeline of targeted cancer medicines in development, as well as a portfolio of out-licensed potentially best-in-class and/or first-in-class medicines, which are expected to generate significant royalties over time.

\* \* \*

In May 2019, Array announced results from the interim analysis of the Phase 3 BEACON mCRC trial: The second-or-third-line treatment with the BRAFTOVI triplet combination (BRAFTOVI + MEKTOVI + cetuximab) showed statistically significant improvement in overall response rate and overall survival compared to the control group, reducing the risk of death by 48%. The triplet combination could be the first chemotherapy-free, targeted regimen for patients with BRAF-mutant mCRC. Array intends to submit these data for regulatory review in the United States in the second half of 2019.

\* \* \*

Under the terms of the merger agreement, a subsidiary of Pfizer will commence a cash tender offer to purchase all outstanding shares of Array common stock for $48 per share in cash for a total enterprise value of approximately $11.4 billion. The closing of the tender offer is subject to customary closing conditions, including regulatory approvals and the tender of a majority of the outstanding shares of Array common stock (on a fully-diluted basis). The merger agreement contemplates that Pfizer will acquire any shares of Array that are not tendered into the offer through a second-step merger, which will be completed promptly following the closing of the tender offer. Pfizer expects to complete the acquisition in the second half of 2019.

Pfizer's financial advisors for the transaction were Guggenheim Securities, LLC, and Morgan Stanley & Co. LLC, with Wachtell, Lipton, Rosen & Katz acting as its legal advisor. Centerview Partners served as Array's exclusive financial advisor, while Skadden, Arps, Slate, Meagher & Flom LLP served as its legal advisor.

22.     On June 28, 2019, Array filed a Schedule 14D-9 Solicitation/Recommendation

Statement under Section 14(d)(4) of the Exchange Act (the "Solicitation Statement") with the SEC

in connection with the Proposed Transaction.

### C. Insiders' Interests in the Proposed Transaction

23.     Array insiders stand to receive a substantial windfall in connection with the Proposed Transaction. Specifically, prior to Array's entry into the merger agreement with Pfizer and in connection with the Proposed Transaction, the executive committee of the Board approved a cash retention pool for certain Array employees, including its executive officers.

24.     Further, according to the Solicitation Statement, each compensatory option to purchase shares that is outstanding and unexercised, whether or not vested, will be converted into the right to receive a cash payment, estimated as follows:

| | In the Money Options | | | | | | |
|---|---|---|---|---|---|---|---|
| Name of Executive Officer or Director | Number of Shares subject to Vested In the Money Options (#) | Weighted Avg. Exercise Price Per Share ($) | Cash Consideration for Vested In the Money Options ($) | Number of Shares Subject to Unvested In the Money Options (#) | Weighted-Average Exercise Price Per Share ($) | Cash Consideration for Unvested Stock Options ($) | Total Cash Consideration for Stock Options in Merger ($) |
| Ron Squarer | 1,635,507 | $ 5.07 | $ 70,212,004 | 1,523,438 | $ 12.19 | $ 54,558,885 | $ 124,770,889 |
| Jason Haddock | 355,350 | $ 5.36 | $ 15,152,528 | 479,902 | $ 10.20 | $ 18,139,352 | 33,291,880 |
| Andrew Robbins | 666,743 | $ 6.98 | $ 27,349,774 | 783,246 | $ 11.93 | $ 28,250,402 | 55,600,176 |
| Victor Sandor, M.D. | 435,914 | $ 6.98 | $ 17,882,623 | 688,914 | $ 12.08 | $ 24,742,638 | 42,625,261 |
| Nicholas Saccomano, Ph.D. | 313,874 | $ 7.53 | $ 12,702,227 | 370,876 | $ 11.54 | $ 13,521,665 | 26,223,893 |
| Curtis Oltmans | 240,692 | $ 10.48 | $ 9,030,804 | — | — | $ — | $ 9,030,804 |
| Kyle A. Lefkoff | — | $ — | $ — | 25,000 | $ 14.55 | $ 836,250 | $ 836,250 |
| Charles M. Baum, M.D., Ph.D. | 25,000 | $ 10.47 | $ 938,250 | 25,000 | $ 14.55 | $ 836,250 | 1,774,500 |
| Gwen A. Fyfe, M.D. | 165,000 | $ 5.54 | $ 7,005,300 | 25,000 | $ 14.55 | $ 836,250 | 7,841,550 |
| John A. Orwin | 145,000 | $ 5.97 | $ 6,094,300 | 25,000 | $ 14.55 | $ 836,250 | 6,930,550 |
| Gil J. Van Lunsen | 25,000 | $ 10.47 | $ 938,250 | 25,000 | $ 14.55 | $ 836,250 | 1,774,500 |
| Shalini Sharp | 50,000 | $ 9.59 | $ 1,920,750 | 25,000 | $ 14.55 | $ 836,250 | 2,757,000 |
| Carrie Cox | — | — | — | 50,000 | $ 14.74 | $ 1,663,000 | 1,663,000 |

25.     Moreover, if Array's named executive officers are terminated in connection with the Proposed Transaction, among other assumptions, they stand to receive a substantial golden parachute package, as set forth below:

**Golden Parachute Compensation**

| Name (1) | Cash ($) (2) | Equity ($) (3) | Pension/ NQDC ($) (4) | Perquisites/ Benefits ($) (5) | Tax Reimbursement ($) (6) | Total ($) |
|---|---|---|---|---|---|---|
| Ron Squarer | $12,606,468 | $66,746,469 | — | $  63,360 | $  5,834,816 | $85,251,113 |
| Jason Haddock | $  3,216,600 | $20,828,600 | $ 15,378 | $  46,080 | $  1,823,417 | $25,930,075 |
| Andrew Robbins | $  5,753,675 | $34,516,418 | — | $  46,080 | $  3,034,650 | $43,350,823 |
| Victor Sandor, M.D. | $  5,871,800 | $30,254,046 | — | $  46,080 | — | $36,171,926 |

## D.  The Solicitation Statement Contains Materially False and Misleading Statements and Omissions

26.     The Solicitation Statement, which recommends that Array shareholders tender their shares to Pfizer in connection with the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Array's financial projections; (ii) the financial analyses performed by Array's financial advisor, Centerview Partners LLC ("Centerview"), in connection with its fairness opinion; and (iii) the sales process leading up to the Proposed Transaction.

27.     The omission of the material information (referenced below) renders the following sections of the Solicitation Statement false and misleading, among others: (i) Background of the Offer and the Merger; (ii) Reasons for the Recommendation; (iii) Certain Financial Projections; and (iv) Opinion of Array's Financial Advisor.

28.     Pfizer's tender offer is set to expire on July 26, 2019 (the "Expiration Date"). It is imperative that the material information that was omitted from the Solicitation Statement be disclosed to the Company's shareholders prior to the Expiration Date to enable them to make an informed decision as to whether to tender their shares. Plaintiff may seek to enjoin Defendants from closing the tender offer or the Proposed Transaction unless and until the material misstatements and omissions (referenced below) are remedied. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1.   Material Omissions Concerning Array's Financial Projections

29.     The Solicitation Statement omits material information concerning Array's financial projections.

30.     The Solicitation Statement contains three tables presenting the unaudited prospective financial information of Array: the "October 2018 Forecasts," the "June 2 Forecasts," and the "June 14 Forecasts" (collectively, the "Projections").

31.     The Solicitation Statement, however, fails to disclose the following concerning the Projections: (1) all line items used to calculate (i) EBIT, and (ii) unlevered free cash flow; and (2) a reconciliation of all non-GAAP to GAAP metrics.

32.     When a company discloses non-GAAP financial metrics in a Solicitation Statement that was relied upon by its board in recommending that shareholders tender their shares pursuant to a tender offer, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[1]

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited July 10, 2019) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

33.     The disclosure of Array's projected financial information is material because it would provide Array shareholders with a basis to project Array's future financial performance and would allow shareholders to better understand the financial analyses performed by Centerview in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Array and its financial advisor, Array shareholders are unable to determine how much weight, if any, to place on Centerview's fairness opinion in determining whether to tender their shares to Pfizer.

34.     Accordingly, in order to cure the materially misleading nature of Array's projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Defendants must also disclose the line item projections that were used to calculate these metrics. Such projections are necessary to make the non-GAAP projections included in the Solicitation Statement not misleading.

35.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Array shareholders.

**2.     Material Omissions Concerning Centerview's Financial Analyses**

36.     In connection with the Proposed Transaction, the Solicitation Statement omits material information concerning analyses performed by Centerview.

37.     The Solicitation Statement fails to disclose the following concerning Centerview's "*Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying (i) the discount rates ranging from 9.5% to 11.5%, and (ii) the perpetuity growth rate of 0%; (2) the implied terminal value of Array; (3) all line items used to calculate unlevered free cash flow; and (4) the basis for assuming that unlevered free cash flows would decline in perpetuity after June 30,

2037, at a rate of free cash flow decline of 80.0% year-over-year.

38.     The Solicitation Statement fails to disclose the following concerning Centerview's "*Selected Public Company Analysis*": (1) the individual valuation multiples calculated for each of the companies observed by Centerview in the analysis; and (2) the factors Centerview utilized in making its "qualitative judgments, based on its experience and professional judgment, concerning differences between the operational, business and/or financial characteristics of Array and the selected companies that could affect the public trading values of each…"

39.     The Solicitation Statement fails to disclose the following concerning Centerview's "*Selected Transaction Analysis*": (1) the individual valuation multiples calculated for each of the companies observed by Centerview in the analysis.

40.     The Solicitation Statement fails to disclose the following concerning Centerview's "*Analyst Price Target Analysis*": (i) the price targets for Array observed by Centerview in the analysis; and (2) the sources of those price targets.

41.     The Solicitation Statement fails to disclose the following concerning Centerview's "*Premiums Paid Analysis*": (1) the individual premiums paid in each transaction utilized by Centerview.

42.     The valuation methods, underlying assumptions, and key inputs used by Centerview in rendering its purported fairness opinion must be fairly disclosed to Array shareholders. The description of Centerview's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Array shareholders are unable to fully understand Centerview's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on it in determining whether to tender their shares to Pfizer. This omitted information, if disclosed, would significantly

alter the total mix of information available to Array shareholders.

**3. Material Omissions Concerning the Sales Process Leading to the Proposed Transaction**

43.     The Solicitation Statement omits material information concerning the sales process leading up to the Proposed Transaction.

44.     The Solicitation Statement states that Array entered into a confidentiality agreement with "Party B." The Solicitation Statement, however, fails to disclose whether this agreement contained a standstill provision with a "don't ask, don't waive" provision (including its time of enforcement) that would preclude Party B from making a superior offer for Array.

45.     Without this information, Array shareholders may have the mistaken belief that Party B was or is permitted to submit superior proposals for the Company, when in fact it is or was contractually prohibited from doing so. This information is material because a reasonable Array shareholder would want to know, prior to tendering their shares to Pfizer, whether Party B is or was foreclosed from submitting a superior proposal.

46.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Array shareholders.

<u>**COUNT I**</u>
**For Violations of Section 14(e) of the Exchange Act**
<u>**Against All Defendants**</u>

47.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

48.     Section 14(e) of the Exchange Act states, in relevant part:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

49.     During the relevant period, Defendants, individually and in concert, directly or

indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(e) of the Exchange Act.

50.     Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(e) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

51.     The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

52.     Defendants acted knowingly or with deliberate recklessness in filing or causing the filing of the materially false and misleading Solicitation Statement.

53.     By reason of the foregoing, Defendants violated Section 14(e) of the Exchange Act.

54.     Because of the false and misleading statements in the Solicitation Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### For Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
### <u>Against All Defendants</u>

55.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56.     Defendants caused the Solicitation Statement to be issued with the intent to solicit

shareholder support for the Proposed Transaction.

57.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder

require full and complete disclosure in connection with tender offers. Specifically, Section

14(d)(4) states, in relevant part:

> Any solicitation or recommendation to the holders of such a security to accept or
> reject a tender offer or request or invitation for tenders shall be made in accordance
> with such rules and regulations as the Commission may prescribe as necessary or
> appropriate in the public interest or for the protection of investors.

58.     SEC Rule 14d-9(d), adopted to implement Section 14(d)(4) of the

Exchange Act, states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in
> section 14(d)(1) of the Act with respect to a tender offer for such securities shall
> include the name of the person making such solicitation or recommendation and
> the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101)
> or a fair and adequate summary thereof[.]

59.     In accordance with SEC Rule 14d-9, Item 8 of Schedule 14D-9 requires that a

company:

> Furnish such additional material information, if any, as may be necessary to make
> the required statements, in light of the circumstances under which they are made,
> not materially misleading.

60.     During the relevant period, Defendants, individually and in concert, directly or

indirectly, disseminated or approved the false and misleading Solicitation Statement specified

above, which failed to disclose material facts necessary in order to make the statements made, in

light of the circumstances under which they were made, not misleading, in violation of Section

14(d)(4) of the Exchange Act and SEC Rule 14d-9.

61.     Each of the Individual Defendants, by virtue of their positions within the Company

as officers and/or directors, were aware of materially false and/or misleading and/or omitted

information but failed to disclose such information, in violation of Section 14(d)(4) of the

Exchange Act and SEC Rule 14d-9. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

62.     Defendants acted knowingly or with deliberate recklessness in filing the materially false and misleading Solicitation Statement which omitted material information.

63.     The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

<u>COUNT III</u>
**Violations of Section 20(a) of the Exchange Act**
<u>**Against the Individual Defendants**</u>

64.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Solicitation Statement.

66.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful

information with respect to the Solicitation Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

67.    In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Solicitation Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Solicitation Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Solicitation Statement.

68.    In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Solicitation Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

69.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

70.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e), 14(d)(4), and Rule 14d-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of

the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and the tender offer in connection with the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding Plaintiff rescissory damages;

C.      Declaring that Defendants violated Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act, and Rule 14d-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expenses and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: July 11, 2019                              Respectfully submitted,

                                                  **HALPER SADEH LLP**

                                                  /s/ Daniel Sadeh
                                                  Daniel Sadeh, Esq.
                                                  375 Park Avenue, Suite 2607
                                                  New York, NY 10152
                                                  Telephone: (212) 763-0060
                                                  Facsimile: (646) 776-2600

Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*